LATESSIA MCCLELLAN AND MARKETHY MCCLENNAN

VERSUS

PREMIER NISSAN L.L.C. D/B/A PREMIER NISSAN OF METAIRIE

NO. 19-CA-289

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 726-822, DIVISION "O"
HONORABLE DANYELLE M. TAYLOR, JUDGE PRESIDING

February 26, 2020

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and Hans J. Liljeberg

**REVERSED AND REMANDED**
    **FHW**
    **JGG**
    **HJL**

COUNSEL FOR PLAINTIFF/APPELLANT,
LATESSIA MCCLELLAN AND MARKETHY MCCLENNAN
    Danatus N. King

COUNSEL FOR DEFENDANT/APPELLEE,
PREMIER NISSAN L.L.C. D/B/A PREMIER NISSAN OF METAIRIE
    Brett M. Dupuy

**WICKER, J.**

Plaintiffs/Appellants Latessia and Markethy McClellan appeal from a grant of summary judgment in favor of Defendant/Appellee Premier Nissan, L.L.C. d/b/a Premier Nissan of Metairie. Plaintiff Latessia McClellan filed suit against Premier alleging breach of contract and fraud related to the purchase of a vehicle in 2005. Plaintiff Markethy McClellan alleged a loss of consortium arising from the same incident. Because Mr. McClellan's loss of consortium claims are not the subject of this appeal, the singular "Plaintiff" will be used to refer to Latessia McClellan throughout this opinion. For the reasons fully discussed herein, we reverse the judgment of the trial court and remand this matter for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

This case arises out of a series of missteps in the purchase of a green Nissan Armada much complicated by Hurricane Katrina. According to her petition, on August 19, 2005, Plaintiff entered into an agreement to purchase the green 2004 Nissan Armada ("green Armada") from Premier. In connection with the purchase agreement, Plaintiff signed a "Simple Interest Retail Installment Contract" ("Finance Agreement") to finance the purchase. As partial payment towards the purchase of the new green Armada, Plaintiff traded in a gray 2004 Nissan Armada ("gray Armada"). Plaintiff had purchased the gray Armada in June 2005 from another dealer affiliated with Premier, and financed it through CitiFinancial.[1] According to Plaintiff, she did not submit a credit application for the purchase of the green Armada. She stated during her deposition that she was told Premier would use the credit application she provided during the transaction involving the

---

[1] Plaintiff alleges that the gray Armada was a "lemon," thus the attempt to trade it in before a payment had come due on the balance owed to CitiFinancial.

gray Armada to obtain financing for the green Armada. That credit application indicated Plaintiff's "gross annual salary" was $78,000.00.

The Finance Agreement for the green Armada indicated that Premier intended to assign the agreement to Nissan Motor Acceptance Corporation ("NMAC"). According to Plaintiff's petition and deposition, other terms of the Finance Agreement included a specified annual percentage rate; a specified monthly payment amount; a specified number of payments; a specified beginning and end date of payments; and the down-payment amount and payoff balance associated with Plaintiff's trade-in.

Another of the documents involved in the green Armada purchase was an "Addendum to Purchase Agreement" (Addendum)[2] which contained a number of additional provisions. The Addendum reads in relevant part:

> If a Retail installment Contract (Financing Agreement) is part of the sales transaction, buyer acknowledges that said contract will be assigned by seller to a financial institution of seller's choosing. In the event seller is unable to assign said contract within seven days of the date hereof, the Purchase Agreement and the Retail Installment Contract shall be null and void and the parties returned to their original positions.
>
> . . .
>
> Final approval of my application for financing is at the sole discretion of the lending institution where the application(s) has been submitted. If approval is not granted, I retain the right to obtain my own financing, but [I must] affirmatively advise you of my intention to do so.
>
> My trade-in, if any, will not be sold until the sale is completed. There will be no charge to the prospective purchaser should the conditional

---

[2] As will be further discussed below, Plaintiff objected to all exhibits submitted with Premier's motion for summary judgment including the Finance Agreement, Addendum, and Credit Application on the grounds that the documents were not verified or authenticated. Plaintiff's affidavit specifies that while the signatures on the aforementioned documents appear to be hers, "she does not recall placing her signatures on the documents and cannot verify the authenticity of the documents." However, the Finance Agreement and Addendum were both filed into the record without objection as attachments to Plaintiff's memorandum in opposition to the motion for summary judgment. Any supporting or opposing documents submitted for the purpose of summary judgment which are not objected to shall be considered when determining whether genuine issues of fact remain. La. C.C.P. art. 966(D)(2); see *Randazzo v. St. Bernard Par. Gov't*, 16-902 (La. App. 4 Cir. 5/17/17), 219 So.3d 1128, 1131–32, *writ denied*, 17-1209 (La. 10/27/17), 228 So.3d 1236.

sale not be completed, including, but not limited to, mileage charges or charges to refurbish the vehicle offered for trade-in, if any. However prospective purchaser acknowledges and agrees to be liable for any damage(s) incurred to the vehicle.

If the sale is not completed for failure to obtain financing seller shall refund to the prospective Purchaser all sums placed with seller as a deposit/earnest money or any other purpose associated with the attempted sale of the vehicle.

Should seller be unable to obtain financing within seven days of date hereof prospective purchaser shall return the vehicle to seller by the end of the seventh day or within forty-eight hours of notification by seller that financing can not (*sic*) be obtained, which ever (*sic*) occurs earlier. Thereafter prospective purchaser will be without authority to further use the vehicle and acknowledges and agrees that law enforcement authorities may be called. Additionally seller, at seller's sole discretion, may retake the vehicle without prior notice to prospective purchaser.

Premier acknowledges that the provisions in the Addendum come from

Louisiana Revised Statutes 32:1261(A)(2)(f),[3] which governs a conditional sale or

"spot delivery" of a vehicle. The law provides that a conditional sale of a motor

vehicle is not allowed except under the terms and conditions specified within

Revised Statutes 32:1261(A)(2)(f) "which shall be in writing and shall be a part of

the conditional sales contract or other written notification signed by the purchaser."

---

[3]Louisiana. Revised Statues. 32:1261 provides,
A. It shall be a violation of this Chapter:
　. . .
(2) For a motor vehicle dealer, specialty vehicle dealer, recreational product dealer, used motor vehicle dealer, or a motor vehicle salesman:
. . .
(f) To deliver to a prospective purchaser a new or a used vehicle on a sale conditioned on financing, i.e., a spot delivery, except on the following terms and conditions which shall be in writing and shall be a part of the conditional sales contract or other written notification signed by the purchaser:
(i) That if the sale is not concluded by the financing of the sale to the purchaser within twenty-five days of the delivery, the sale contract shall be null and void.
(ii) That the vehicle being offered for trade-in by the purchaser shall not be sold by the dealer until the conditional sale is complete.
(iii) That there shall be no charge to the purchaser should the conditional sale not be completed, including but not limited to mileage charges or charges to refurbish the vehicle offered for trade-in. However, the purchaser shall be responsible for any and all damages to the vehicle or other vehicles damaged by the fault of the purchaser and any and all liability incurred by the purchaser during the purchaser's custody of the vehicle to the extent provided for in R.S. 22:1296.
(iv) That if the conditional sale is not completed, the dealer shall immediately refund to the purchaser upon return of the vehicle all sums placed with the dealership as a deposit or any other purpose associated with the attempted sale of the vehicle.
(v) That the prospective purchaser shall return the vehicle to the dealership within forty-eight hours of notification by the dealer that the conditional sale will not be completed. If the prospective purchaser does not return the vehicle to the dealership within forty-eight hours of notification by the dealer, an authorized agent of the dealer shall have the right to recover the vehicle without the necessity of judicial process, provided that such recovery can be accomplished without unauthorized entry into a closed dwelling, whether locked or unlocked and without a breach of peace.

Louisiana Revised Statute 32:1261(A)(2)(f)(i) provides, "if the sale is not concluded by the financing of the sale to the purchaser within twenty-five days of the delivery, the sale contract shall be null and void." Premier acknowledges that the Addendum provision containing the seven-day window for completion of the sale mirrored a prior law [La. R.S. 32:1254], which was amended effective August 15, 2004.

At the time of purchase on August 19, 2005, NMAC, the lender indicated on the Finance Agreement, conditioned financing approval on "proof of paid in full auto" and "verification of income as stated."[4] Plaintiff testified that Premier never told her proof of income was needed or that Premier ultimately failed to secure financing for the green Armada.

Ten days after Plaintiff took possession of the green Armada, Hurricane Katrina devastated New Orleans. After evacuating for Hurricane Katrina, Plaintiff returned to her home on or about October 19, 2005. According to Plaintiff's deposition testimony and affidavit, Premier's sales person, Fred Howard, told her that, due to Hurricane Katrina, NMAC placed a Moratorium on making loan payments until January 1, 2006. On October 28, 2005, Plaintiff received a letter from Nissan North America congratulating her on her purchase of a new Nissan Armada.

According to Plaintiff's affidavit, in October or early November of 2005, she was informed by CitiFinancial that payments on the gray Armada were past-due. Plaintiff testified that was the first time she became aware of any problems with the purchase of the green Armada. Plaintiff testified that she informed CitiFinancial that the gray Armada had been traded in and contacted Premier to find out why the balance had not been paid off. Plaintiff alleges that, when she

---

[4] A document titled "NMAC/IFS Application Status" is attached to Plaintiff's affidavit evidencing that Plaintiff had achieved "approved" status on August 19, 2005, subject to the above listed "credit stipulations."

contacted Premier, she was assured that the gray Armada would be paid off, and Premier forwarded her a copy of a check for the balance owed. Premier's general manager Philip Leone gave deposition testimony that he was aware that a check had been prepared to pay the balance owed on the gray Armada. A copy of a check dated November 11, 2005, and made out to CitiFinancial in the amount of $33,250.68 is attached to Plaintiff's affidavit, referencing the VIN number for the gray Armada and containing instructions to remit title to Premier Nissan of Metairie.

Plaintiff stated in her affidavit that she did not submit the application to register the green Armada to the Louisiana Department of Public Safety and Corrections Office of Motor Vehicles. Instead, Premier submitted the registration application, and Plaintiff went to Premier to pick up the license plate and the registration certificate for the vehicle. Plaintiff attached the Registration Certificate for the green Armada to her affidavit. The Registration is dated November 12, 2005, and lists Nissan Motor Acceptance Corp. as the lienholder. Premier's general manager Philip Leone testified in his deposition that Premier sent the vehicle registration applications to the State of Louisiana on behalf of purchasers. Plaintiff alleges that, when she picked up the tag, no one at Premier said anything about problems with the green Armada's financing.

Plaintiff also testified in her deposition that she brought the green Armada to the Premier dealership to be serviced on multiple occasions and left the vehicle at the dealership. Plaintiff attached a service invoice to her affidavit that indicates that Premier performed service on the green Armada on December 9, 2005. Plaintiff alleges that, while the vehicle was being serviced, no one informed her of problems with the green Armada's financing.

Meanwhile, Plaintiff alleges that Premier sold the gray Armada to a third party, Derrick Edwards.[5]  Mr. Edwards was deposed, and he testified that he purchased a gray Nissan Armada from Premier.  He eventually returned the vehicle because of an issue with the title.

Premier alleges that it sent correspondence to Plaintiff beginning in November of 2005 that explained financing had not been approved and that Plaintiff would be required to either submit a new credit application and sign a new contract or return the vehicle.[6]  Plaintiff, in her affidavit, denies receiving any mail from Premier or any notices from the Post Office that she had mail waiting to be picked up.  However, Plaintiff testified that she had conversations with Premier in February of 2006, in which Premier expressed the need for Plaintiff to sign new paperwork.

Premier's general manager, Philip Leone, testified that in February or March of 2006, Premier re-submitted Plaintiff's credit application and received approval for the loan with the only condition being "proof of paid in full auto."  However, according to Mr. Leone, Plaintiff was required to sign new paperwork to finalize the sale.  Plaintiff never returned to Premier to sign new paperwork.  Premier repossessed the green Armada on June 20, 2006.

Plaintiff originally filed suit against Premier on August 18, 2006.  On February 4, 2013, the suit was dismissed as abandoned pursuant to La. C.C.P. art. 561.  On May 10, 2013, Plaintiff filed the current suit containing various allegations of fraud and alleging that Premier breached the terms of the contract for

---

[5] Attached to Plaintiff's affidavit are several invoices from Premier's service center for work performed on the gray Armada after August 19, 2005, listing Derrick Edwards as the owner of the vehicle.  The invoices indicate that Premier serviced the gray Armada in October and November 2005.  Premier produced the invoices during discovery, but objected to Plaintiff's use of the documents on grounds that the service invoices were not relevant to the breach of contract claim because they are dated after the seven-day window for obtaining financing allowed by the Addendum to the Purchase Agreement.  However, these documents are relevant to prove that Premier violated the Addendum by selling Plaintiff's trade-in vehicle before the sale of the green Armada was complete.
[6] Plaintiff objected to the introduction and consideration of certified mail envelopes and letters attached to Mr. Leone's deposition from the months of November 2005 and February 2006.

sale by (a) failing to secure financing on the green Armada at the agreed upon interest rate, (b) not paying the balance due on the gray Armada, (c) selling the gray Armada before securing financing for the green Armada, and (d) charging plaintiff with mileage fees and other prohibited fees. On August 21, 2013, Premier filed an exception of prescription, which the trial court granted. On appeal, this Court reversed that trial court judgment, finding the applicable prescriptive period for the breach of contract action to be ten years. *McClellan v. Premier Nissan, L.L.C.*, 14-726 (La. App. 5 Cir. 2/11/15), 167 So.3d 934.

Following remand, on May 28, 2015, Premier filed an Answer and Reconventional Demand. In its position as plaintiff-in-reconvention, Premier sought to recover from Plaintiff sums equal to $35 for each day Plaintiff was in possession of the vehicle and 35 cents per mile from the date Plaintiff took possession until the ultimate sale of the vehicle to a third party. On February 2, 2018, Premier filed a Motion for Summary Judgment asserting that, with respect to Plaintiff's breach of contract claim, there were no genuine issues of material fact and Premier was entitled to judgment as a matter of law.

On March 28, 2018, the trial court granted summary judgment in favor of Premier and dismissed Plaintiff's breach of contract claim with prejudice. Plaintiff appealed. The appeal was dismissed for lack of jurisdiction based on a finding that the judgment appealed from was not a final judgment. *McClellan v. Premier Nissan, L.L.C.*, 18-376 (La. App. 5 Cir. 12/19/18), 262 So.3d 453. The trial court issued an Amended Judgment on April 8, 2019, designating the former partial judgment "a final judgment for purposes of immediate appeal." The instant appeal followed.

## ASSIGNMENTS OF ERROR

Plaintiff assigns five errors to the decision of the trial court granting summary judgment in favor of Premier:

1. The trial court erred in allowing defendant/appellee to file its Motion for Summary Judgment;

2. The trial court erred in admitting into the record the exhibits attached to defendant/appellee's Motion for Summary Judgment;

3. The trial court erred in granting defendant/appellee's Motion for Summary Judgment regarding plaintiff/appellant's breach of contract claim;

4. The trial court erred in granting defendant/appellee's Motion for Summary Judgment regarding plaintiff/appellant's fraud claims; and;

5. The trial court erred in admitting into evidence the attachment to defendant/appellee's Reply Memorandum to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment.

## LAW AND DISCUSSION

This is the third appeal in this matter. As the summary judgment at issue in this appeal addressed only Plaintiff's claims for breach of contract and a prior appeal has already addressed the prescription period applicable to Plaintiff's fraud claims, we will not address Plaintiff's fourth assignment of error. *See McClellan*, 167 So.3d 934.

*Timeliness of Motion for Summary Judgment*

As to Plaintiff's claim that Premier's motion for summary judgment was filed after the deadline for filing dispositive motions had already passed and, therefore, should not have been heard, the record shows that Plaintiff failed to object to the timeliness of the motion. Therefore, we find that this assignment of error is without merit.

### *Documents Improperly Considered on Summary Judgment Motion*

Plaintiff's second and fifth assignments of error have merit because many of Premier Nissan's documents were not properly authenticated by affidavit or deposition as required by Louisiana Code of Civil Procedure art. 966(A)(4),[7] or were attached to Premier's Reply Memorandum in support of its summary judgment motion in violation of Louisiana Code of Civil Procedure art. 966(B)(3).[8] The trial judge considered such documents in error. However, we pretermit a full discussion of these assignment of error because we find that even if we considered all of the documents, genuine issues of material fact would remain as to Plaintiff's breach of contract claim.

### *Summary Judgment*

  a. <u>Standard of Review</u>

Appellate courts review a grant of summary judgment *de novo* utilizing the same criteria that the trial court considers when determining whether summary judgment is appropriate. *Smith v. City Bank & Tr. Co.*, 18-664 (La. App. 3 Cir. 5/1/19), 271 So.3d 263, 274–75.  The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of an action.  La. C.C.P. art. 966(A)(2).  A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.  La. C.C.P. art. 966(A)(3).  The burden of proof rests with the mover.  However, if the mover will not bear the burden of proof at trial on the issue that is before the court

---

[7] The "only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La. C.C.P. art. 966(A)(4). The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. La. C.C.P. art. 966(D)(2).  The list of documents that may be filed for summary judgment purposes is exclusive, and the article "intentionally does not allow the filling of documents that are not included in the exclusive list… unless they are properly authenticated by an affidavit or deposition to which they are attached."  La. C.C.P. art. 966, 2015 comment (c) (emphasis added).

[8] Louisiana Code of Civil Procedure art. 966(B)(3) provides, "[n]o additional documents may be filed with the reply memorandum."

on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1).

Only in the event that the mover's supporting documents meet the burden of showing that "it is quite clear as to what is the truth and that there has been excluded any real doubts as to the existence of a genuine issue of material fact," does the burden shift to the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Smith*, 271 So.3d at 272–73 (quoting *Premier Restaurants, Inc. v. Kenner Plaza Shopping Center, L.L.C.*, 99-1310 (La. App. 5 Cir. 8/29/00), 767 So.2d 927); La. C.C.P. art. 966(D)(1). Because the burden lies with the mover, the mover's supporting documents are closely scrutinized and the non-mover's are indulgently treated. *Smith*, 271 So.3d at 273. Furthermore, any inferences drawn from the underlying facts must be construed in the light most favorable of the non-moving party. *Id.*

Premier's argument that it is entitled to summary judgment is two-fold. First, Premier argues that Plaintiff could not succeed on a breach of contract claim because the formation of a contract was conditioned on Premier's ability to assign the Finance Agreement to a financial institution within seven days. Next, Premier attempts to prove that Plaintiff was to blame for the failure of the condition because she misrepresented her gross income when applying for credit to purchase the green Armada. We will address each part of Premier's argument separately.

10

b. Issues of Fact–Failure of a Condition

Premier argues that the Finance Agreement (titled "Retail Installment Contract") and Addendum clearly condition the sale of the green Armada on obtaining financing. The Finance Agreement indicates that the contract will be assigned to a third-party lender who will finance the loan, and the Addendum explains that,

> If a Retail installment Contract (Financing Agreement) is part of the sales transaction . . . In the event seller is unable to assign said contract within seven days of the date hereof, the Purchase Agreement and the Retail Installment Contract shall be null and void and the parties returned to their original positions.

Premier argues that because financing was not secured within seven days, according to Louisiana Civil Code art. 1773,[9] the condition failed, and the failed condition renders the contract, by its own terms, null and void. We find that Premier failed to establish, through supporting documentation, that no genuine issue of fact exists regarding the failure of the condition that allegedly rendered the contract null and void.

Louisiana Civil Code art. 1772 provides that "a condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment." Genuine issues of material fact exist as to which party was responsible for the failure to satisfy the condition of obtaining financing. While Premier attempted to lay all of the blame at Plaintiff's feet, Premier failed to allege or provide evidence that it attempted to obtain proof of income from Plaintiff or inform Plaintiff of the dealership's inability to secure financing and assign the Finance Agreement to a financial institution *prior to November of 2005*.

Philip Leone testified in his deposition that Fred Howard, the Premier salesman who conducted the sale of the green Armada, never told Mr. Leone that

---

[9] Louisiana Civil Code. art. 1773 provides, "if the condition is that an event shall occur within a fixed time and that time elapses without the occurrence of the event, the condition is considered to have failed."

he could not get proof of income from Plaintiff. Mr. Leone testified that Mr. Howard asked him if he could have the proof of income requirement waived because it would be faster than obtaining proof of income from Plaintiff, but "he never told me he couldn't get the proof of income." In fact, Mr. Leone testified that he discovered that Plaintiff's loan was unsecured sometime near "the end of September, beginning of October" when he heard from "somebody" in the company that "Ms. McClellan can't verify her income." None of the supporting documentation submitted by Premier (even considering the documents which we have deemed inadmissible) relates to the seven-day period for obtaining financing referenced in the Addendum.

It was Premier's burden, as the party moving for summary judgment, to present supporting documentation sufficient to resolve all material issues of fact and establish that it was entitled to judgment as a matter of law. *See Smith*, 271 So.3d at 272–73 (citing *Premier Restaurants, Inc. v. Kenner Plaza Shopping Center*, L.L.C., 99-1310 (La. App. 5 Cir. 8/29/00), 767 So.2d 927, 932–33). Only after Premier satisfied its initial burden would Plaintiff be required to submit evidence showing that a material issue of fact remained in dispute. *See Gatlin v. Kleinheitz*, 09-0828 (La. App. 1 Cir. 12/23/09), 34 So.3d 872, 875, *writ denied,* 10-84 (La. 2/26/10), 28 So.3d 280.

Nevertheless, Plaintiff did submit supporting documentation sufficient to prove that genuine issues of fact remain in dispute. In her affidavit, Plaintiff states that she was never informed of the need to verify her income or of the failure to obtain finance approval within the seven-days allowed under the Addendum. In support of this claim, Plaintiff submitted the letter she received from Nissan North America dated October 28, 2005, congratulating her on her purchase of the green Armada; the copy of the check for $33,250.68 made out to CitiFinancial which she

received from Premier dated November 7, 2005; the registration certificate that Plaintiff picked up from Premier dated November 12, 2005; and the service receipt from December 9, 2005, for work performed on the green Armada.

Plaintiff testified that during each episode of contact with Premier represented by the aforementioned documents, no one from Premier told her that there were problems with the financing on the green Armada. Plaintiff testified during her deposition that she "thought the deal was done" and only began to suspect problems with the financing when CitiFinancial contacted her in October or November of 2005 informing her that the balance on the gray Armada had not been paid.

Also significant to the issue of who is at fault for the failure of the condition is the fact that the Addendum to the Purchase Agreement in this case preserves Plaintiff's right to obtain her own financing, but the right only arises in the event that "approval is not granted" by the financial institution of Premier's choosing. Plaintiff's evidence adequately demonstrates that issues of fact exist as to whether Premier timely notified her either that verification of her income was needed or that the financing was not approved in time for Plaintiff to exercise her right to secure her own financing for the vehicle after it became apparent that Premier could not do so.

Furthermore, according to the language of the Addendum, the fact that the "[c]ontract shall be null and void," is only one result of failing to assign the contract within seven days. The full provision states, "[i]n the event seller is unable to assign said contract within seven days . . . [the] Contract shall be null and void *and* the parties returned to their original positions." (Emphasis added). So, another necessary result of failing to obtain financing within the time allotted is that the parties must be returned to their original positions.

In this case, to fulfill this requirement, Premier would have to return the gray Armada and any additional sums that Plaintiff paid toward the purchase of the green Armada. In exchange, Premier would get the green Armada back. However, Premier also failed to submit supporting documentation that it was ready and able to return Plaintiff to her original position after the failure of the condition. On the contrary, to refute Plaintiff's allegation that Premier sold the gray Armada to a third party before the sale of the green Armada was complete, Premier relied on general denials and semantics.[10] Plaintiff presented deposition testimony that raises issues of fact regarding the time frames that the gray Armada was in Premier's possession and able to be returned to Plaintiff and whether a sale of the gray Armada before the financing was secured on the green Armada constitutes a breach of contract between Plaintiff and Premier.[11]

c. Issues of Fact–Plaintiff's Income

In its attempt to demonstrate that Plaintiff was wholly at fault for the failure to obtain financing on the green Armada, Premier alleges that Plaintiff misrepresented her income on her credit application with NMAC. Essentially, Premier argues that whether it informed Plaintiff of the need to verify her income

---

[10] In brief to this Court, Premier characterized the transaction between Premier and Derrick Edwards as a "spot delivery," which is the same label that Premier used to describe its transaction with Plaintiff. A spot delivery is a sale conditioned on financing, and certain terms and conditions must accompany the transaction as provided by Louisiana Revised Statutes 32:1261(A)(2)(f). One requirement of the law is that, when a spot delivery takes place, "the vehicle being offered for trade-in by the purchaser shall not be sold by the dealer until the conditional sale is complete." La. R.S. 32:1261(A)(2)(f)(ii). Essentially, Premier stated that it did not sell Plaintiff's trade-in before the conditional sale was complete, it merely conditionally sold plaintiff's trade-in to a third party.

[11] In its reply memorandum, Premier objected to Plaintiff's other evidence regarding the sale of the gray Armada. Premier argued that a Carfax report tracing the VIN number of the gray Armada was inadmissible for purposes of summary judgment pursuant to Louisiana Code of Civil Procedure. arts. 966 and 967. It further argued that several service invoices for the gray Armada listing Derrick Edwards as owner should be excluded as irrelevant. The objections were not taken up at the summary judgment hearing, and the documents were admitted. The documents are relevant to the issue of whether Premier was able to return Plaintiff to her original position after the failure to obtain financing and, at least with respect to the service invoices, Plaintiff's affidavit clearly identifies the documents as evidence produced by Premier. While Plaintiff's affidavit fails to adequately establish a foundation for the Carfax Report, the other evidence along with Derrick Edward's deposition raises an issue of fact.

is immaterial because Plaintiff would have been incapable of verifying her income as reported on the credit application.

To support its allegation, Premier attached an NMAC credit application listing Plaintiff's annual gross income as $78,000 and income tax returns for the years 2004, 2005, and 2006 listing Markethy McClellan and Latessia McClellan as joint taxpayers and showing amounts less than $78,000. Premier argues that Plaintiff lied on her credit application because she purportedly used her income as well as her husband's income although her husband took no part in the sale and was not a party to the contract. Furthermore, Premier argues that Plaintiff misrepresented the joint income of Plaintiff and her husband on the credit application.

Premier did not meet its burden of establishing that all material issues of fact were undisputed and that it was entitled to summary judgment as a matter of law. Plaintiff submitted evidence that financing was eventually approved without the proof of income requirement. Attached to Plaintiff's affidavit are credit application reports from both NMAC and two other financial institutions showing approved status with no proof of income requirement.[12] Furthermore, Plaintiff has testified that no one from Premier ever asked her to present proof of income and she was never told that financing would not be approved by NMAC on the terms requested. The Addendum provides that Plaintiff retained the right to obtain her own financing, if Premier could not obtain financing for her. Unless Premier provided Plaintiff with notice that financing could not be obtained with NMAC, Premier cannot now foreclose the possibility that Plaintiff might have obtained financing on

---

[12] Plaintiff states in her affidavit that these documents were received from Premier during discovery. Premier's only objection is that the documents are not relevant because they were generated after the seven-day period for obtaining financing provided for in the Addendum. With the exception of the NMAC report, the documents are undated. We find these documents are relevant to the issues relating to the verification of Plaintiff's income.

her own. Plaintiff was never given the opportunity to try to obtain financing for the green Armada on her own within the seven day period. Therefore, issues of fact still remain as to whether a breach of contract occurred despite Premier's claims that Plaintiff misrepresented her income.

**CONCLUSION**

For the aforementioned reasons, we find that Premier failed to meet its burden of proving that no genuine issues of fact exist as to Plaintiff's breach of contract claim. The judgment of the trial court granting summary judgment in favor of Premier is hereby reversed and the matter remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **FEBRUARY 26, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
**CLERK OF COURT**

## 19-CA-289

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DANYELLE M. TAYLOR (DISTRICT JUDGE)
BRETT M. DUPUY (APPELLEE)

**MAILED**
DANATUS N. KING (ATTORNEY)
2475 CANAL STREET
SUITE 308
NEW ORLEANS, LA 70119